## Shaff *v.* Bearl, Appellant.

*Judgment—Opening judgment—Dower interest—Payment—Laches.*

On a rule to open a judgment it appeared that plaintiff owned land charged with a dower interest secured by a mortgage. Subsequently he sold the land in parts at three different times, by three different deeds to three different persons. The second purchaser paid a part of the purchase money in cash and gave two judgment notes, the whole aggregating the purchase money mentioned in the deed. The first note which was a straight note to the plaintiff was subsequently paid. The second note provided that the defendant should pay the interest thereon to the widow owning the dower interest, and after her death the principal to the plaintiff. The plaintiff, however, was not one of the persons entitled to the principal of the dower. Subsequently the three purchasers united in a formal undertaking on the margin of the record of the mortgage by which each agreed to assume the payment to the widow of a proportionate share of the interest, and at her death to pay the principal to the heirs entitled to it. After the death of the widow these payments of principal were made. Seventeen years elapsed between the entry of the judgment and the death of the widow. During this period the judgment was revived from time to time but without accumulated interest. In the meantime the defendant had sold the land, and after the death of the widow the terre tenants had the judgment opened as to them. Subsequently the defendant took a rule to open the judgment as to himself. *Held*, that inasmuch as the judgment was apparently only an additional security to secure the dower, and as the defendant had not been guilty of inexcusable laches, the judgment should be opened to let the defendant into a defense.

Argued May 3, 1911.   Appeal, No. 27, April T., 1911, by defendant, from order of C. P. Somerset Co., Dec. T., 1904, No. 248, discharging rule to open judgment in case of David Shaff's widow and heirs v. Henry Bearl.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Rule to open judgment.

The opinion of the Superior Court states the case.

*Error assigned* was order discharging rule to open judgment.

*W. H. Ruppel,* with him *Charles F. Uhl, Jr.,* for appellant.—There was no laches: Ziegler's Petition, 207 Pa. 131; Adams's App., 101 Pa. 471; Steckel v. Steyer, 1 Northampton County Repr. 363; Kemmerer's App., 125 Pa. 283.

*J. A. Berkey,* with him *John R. Scott, L. C. Colborn* and *C. L. Shaver,* for appellees, cited on the question of laches: Applebee's App., 126 Pa. 385; Richards's App., 127 Pa. 63; Huppert v. Huppert, 224 Pa. 374; Lytle v. Forrest, 175 Pa. 408; Johnson v. Frothingham, 214 Pa. 523; People's Bank v. Stroud, 223 Pa. 33.

OPINION BY HEAD, J., July 13, 1911:

This is an appeal from an order discharging a rule to open a judgment entered on a warrant of attorney. The matter was heard upon petition, answer, and the various records to which we shall refer. Assuming for the moment the truth of the facts set forth in the petition, and viewing them in the light of what is exhibited in the records referred to, the petitioners' case was this: In 1871 David Shaff took title to a large tract of land through proceedings in the orphans' court of Somerset county in the estate of Peter Shultz, deceased. The dower of the widow of said deceased who survived him, was ascertained in those proceedings to be the annual interest on $2,502.84, and Shaff, the purchaser, in the adjustment of his purchase money, gave a mortgage on the entire tract to secure the payment to her annually during life of the sum of $150.17, and the further payment on her death of said principal sum of $2,502.84 to the heirs of said deceased. On April 1, 1871, Shaff conveyed two separate parcels of this land, so bound by the lien of the mortgage, to Jonathan Purl and Henry Bearl, the petitioner, respectively. By the first of these deeds he conveyed thirty-five acres for a consideration of $1,260, and in the deed to Purl charged the land thus conveyed with the sum of $420, the interest on which annually was to be paid to the widow of Peter Shultz, deceased, and at her

death the principal to his heirs; thus arranging for the taking over by the purchaser of that much of the vendor's mortgage obligation, already stated.  On the same day Shaff conveyed to the petitioner forty-seven acres and 147 perches of his larger tract for the sum of $1,629.24. This deed was in the ordinary form, contained a covenant of general warranty, but created no lien or charge in relief of the outstanding mortgage on the entire tract. Bearl, the purchaser, paid one-third of the purchase money, $543.08, in cash and gave to Shaff two separate judgment notes, each for a like sum, thus providing for the whole of the purchase money.  Judgments were confessed on these notes to Nos. 236 and 237 respectively of May Term, 1872, of the court of common pleas of Somerset county.  The first of these provided that the said sum of $543.08 was to be paid in five equal annual installments of $108.62.  This judgment was in due time paid, satisfied of record, and need be no further considered.  The other note for the same amount was significantly different in character.  It provided that Bearl, the purchaser, was to pay annually to the widow of Peter Shultz, deceased, the interest on $543.08, and at her death the principal sum was made payable to Shaff, the vendor.

In March, 1873, Shaff sold the remainder of the entire original tract bound by the lien of the mortgage to Samuel Smith.  Shaff, having thus parted with all of the land bound by the lien of the mortgage, had the three purchasers thereof already mentioned unite in a formal undertaking, written on the margin of the record of the mortgage, by which each one agreed that he would assume the payment to the widow Shultz annually of a proportionate share of the interest due her as provided for in the mortgage, and at her death would pay the principal producing that sum to the Shultz heirs.  This practically relieved Shaff of any further direct obligation under his mortgage.  Whether or not he had given his personal bond as well as the mortgage aforesaid when he took title does not appear.

The petitioner avers that the payment of the purchase money mentioned in his deed was intended to be made in the manner already indicated, to wit, one-third cash, one-third in five subsequent annual payments, and the remaining one-third in relief of the obligation of David Shaff to the widow and heirs of Peter Shultz, deceased, and that when he later joined his copurchasers in the formal assumption of a like amount of the mortgage debt, he had executed two obligations for the payment of a single debt.

Now it is quite clear that when Bearl bought from Shaff and arranged the purchase money in the manner stated, he had no relations whatever with the widow Shultz except as he had become the terre-tenant of land bound by the lien of her mortgage and his purchase money, in whole or in part, could be well paid to his vendor by having it applied to extinguishing the latter's obligation to the Shultz estate.

During all of the time that elapsed from the entry of said judgment in 1872 to the death of the widow in 1907, neither Shaff nor his widow and heirs, after his death, set up any claim to the payment of any interest accruing on the debt secured by that judgment. Nor did Bearl pay interest on that judgment to anybody, but he did pay regularly his proportionate share of the interest on that amount of the mortgage and had it receipted, and therefore was in no default to the widow Shultz. When the judgment was revived from time to time, it was simply revived for the principal sum without any accumulated interest. The entire transaction therefore, as it seems to have been viewed and acquiesced in by the parties during all that period, lends strong color to the claim of the plaintiff that the judgment note he gave to Shaff was to secure the same one-third of his money purchase again covered a year later by his assumption of precisely that amount of the mortgage debt.

As stated, the widow Shultz died in 1907, and thereafter the principal sum secured by the mortgage was

promptly paid to the heirs of Peter Shultz and the mortgage satisfied. Meantime the petitioner had himself sold the land which he supposed, by the satisfaction of the mortgage, had been cleared of liens.

David Shaff had died some years before the widow Shultz. After his death had been suggested on the record of the judgment referred to, his widow and heirs were substituted as parties plaintiff. It may here be noted, as a fact not without significance and yet perhaps capable of explanation, that if the principal sum secured by that judgment had been then regarded as a debt due to David Shaff apart from or in addition to the same amount of the mortgage assumed by Bearl, the executors or administrators of the deceased plaintiff would have been the proper persons to substitute on the record in his stead. If on the other hand the judgment bond had been originally taken merely as an indemnity and retained after the formal assumption by the debtor of a share in the mortgage, with only a possibility that it would ever become an obligation to pay money, it can be readily understood why the widow and heirs were selected as the new parties plaintiff.

The latest revival of the judgment so often referred to was in April, 1907, and the new judgment, like the older ones, was again entered against Henry Bearl, and also, as terre-tenants, the persons to whom he had conveyed. After the satisfaction of the mortgage these terre-tenants went into court and asked to have the judgment opened as to them and this was accordingly done. Before that time, as already stated, Henry Bearl had sold the land, and the record does not now show what notice, if any, he had of that proceeding, or why he did not join therein for his own relief, but shortly afterwards he did file his petition setting forth substantially the facts as above recited. An answer was filed which did not deny that he had paid one-third of the purchase money recited in the deed in cash and a second one-third in installments in the manner stated. Nor did it deny that he had assumed, and, after

the death of the widow, paid a like share of the original mortgage debt. The answer did set up that the original purchase money was not only $1,629.24, as stated in the deed, but was $543.08 more than that, and it was this extra amount that was to be paid in accordance with the terms of the mortgage and secured by the purchaser's assumption of so much of the mortgage. In this respect the answer is strongly contradicted by the deed itself. It of course is not necessary that the deed express the real consideration as between the parties. It is sufficient that it show a valuable consideration, but it is rare for parties to take the trouble to express in odd dollars and cents what purports to be the real consideration and adjust the purchase money obligations in customary fractional parts of that consideration, and at the same time withhold a part of what one is to receive and the other is to pay. This allegation in the answer seems to be abandoned by the able counsel for the appellee in his printed brief where he says: "The amount of the purchase money for the real estate purchased from David Shaff is admitted by both parties."

With the record in this condition the learned judge below discharged the rule to show cause why the judgment should not be opened and the petitioner permitted to defend, chiefly on the ground that the petitioner had been guilty of inexcusable laches. In this conclusion we are not able to concur. Assuming that when he bought it was the common intention of himself and his vendor that one-third of the purchase money should be set apart to meet the vendor's obligation pro tanto under his general mortgage, it was entirely proper that the latter should take the judgment note that was given, save only in one respect, to wit, that the note should have provided that on the death of the widow the principal should be paid to the Shultz heirs instead of to Shaff himself. But if the latter was already bound for the payment to the heirs, it is not at all improbable that the judgment may have been intentionally taken as it was and yet the ultimate purpose

of the parties be as first stated. When he later had the petitioner execute a formal assumption of a proportionate share of the mortgage, he then had two securities for the payment of one debt, but he was entitled to retain them. If so, then it was his right to continue to revive the judgment and keep it a lien on all of the lands of Bearl as long as the widow should live and until payment of the debt had been actually made. Down to that time, as we view it, he could not fairly be chargeable with laches from anything that now appears upon the record. Since the death of the widow and the payment of the mortgage no sufficient time has elapsed, in our judgment, to warrant a refusal of relief merely on the ground of laches, and especially is this the case where no adverse intervening rights of third parties have accrued and where those immediately interested in the question, to wit, the terre-tenants, had asked for and been granted similar relief.

We recognize that proceedings of this kind are equitable in their character and should be disposed of according to well established principles controlling proceedings in equity. We are not undertaking to set aside any question of fact found by the learned judge below upon testimony produced. His opinion shows that his action was largely, if not entirely, controlled by what we regard as a mistaken application of the doctrine of laches. Nor need we now concern ourselves about the difficulties which the petitioner may encounter in finding sufficient competent evidence to support his claim on the trial. Nor again do we think we have merely a case of a petition in an equitable proceeding met by a responsive answer. As already stated, the answer, especially when viewed in the light of the printed brief of counsel, seems to concede what we regard as a highly important fact in the case, and the petition is so strongly corroborated by other undenied facts, either averred or appearing in the records exhibited, that we are constrained to think the learned judge below fell into error in discharging the rule.

The order discharging the rule is reversed and set aside

and the said rule reinstated and made absolute and a procedendo awarded, the costs of this appeal to be paid by the appellees.